# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| SONYA ANN MAHER,<br><br>      Petitioner,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>      Respondent. | Case No. 4:12-cv-00192-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

      Pending before the Court is Petitioner Sonya Ann Maher's Petition for Review (Dkt. 1), filed April 16, 2012, seeking review of the Social Security Administration's final decision to deny her disability benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I.  ADMINISTRATIVE PROCEEDINGS

      On May 16, 2008, Sonya Ann Maher ("Petitioner") applied for disability insurance and supplemental security income, alleging a disability onset date of June 2, 2005, when she was 32 years old. Petitioner's claim was initially denied on September 24, 2008 and, again, denied on reconsideration on January 7, 2009. (AR 12.) On February 2, 2009, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (AR 12.) On January 25, 2011, ALJ John T. Molleur held a hearing in Twin Falls, Idaho, at which time Petitioner, represented by attorney Merrick Jackson, appeared and testified. (AR 12.) Polly A. Peterson, an

**MEMORANDUM DECISION AND ORDER - 1**

impartial vocational expert, also appeared and testified.

At the time of the hearing, Petitioner had past relevant work as a park maintenance worker. (AR 25.) Petitioner last attended school in the twelfth grade. (AR 26.)

On February 11, 2011, the ALJ issued a decision, denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. (AR 27.) Petitioner timely requested review from the Appeals Council. The Appeals Council denied Petitioner's request on March 31, 2012 rendering the ALJ's decision the Commissioner's final decision. Plaintiff now seeks judicial review of the Commissioner's decision to deny benefits. Petitioner contends the ALJ erred by failing to: (1) properly evaluate the medical opinion evidence, and (2) include all Petitioner's impairments in the Residual Functional Capacity ("RFC") assessment.

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human*

**MEMORANDUM DECISION AND ORDER - 2**

*Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995).  The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir.1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.  The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error.  *Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*.  However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

**MEMORANDUM DECISION AND ORDER - 3**

## III. DISCUSSION

### A. Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner had not engaged in SGA since June 2, 2005, the alleged onset date. (AR 14.)

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).

**MEMORANDUM DECISION AND ORDER - 4**

An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: degenerative disc disease of the lumbar spine, history of an abnormal liver function study, obesity, insomnia, panic disorder, and major depressive disorder. (AR 14.)

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id.* Here, the ALJ concluded that Petitioner does not have an impairment (or combination of impairments) that meets or medically equals a listed impairment (AR 16.)

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's

**MEMORANDUM DECISION AND ORDER - 5**

past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except she requires the option to sit or stand at her workplace. She is unable to climb ladders, ropes, and scaffolds. She can perform all other postural activities occasionally. She is limited to work in a low stress setting, with only occasional decision-making or changes in the work setting. She is limited to only brief superficial contact with the general public and only occasional contact with co-workers and supervisors. She is limited to unskilled work. (AR 17.)

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled. Here, the ALJ considered Petitioner's age, education, work experience, and residual functional capacity and determined that there are jobs existing in significant numbers in the national economy that Petitioner can perform. (AR 26.)

**B.     Analysis**

      1.      <u>Petitioner's Medical Opinion Evidence</u>

The Ninth Circuit has held that a treating physician's medical opinion is entitled to special consideration and weight. *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989). Such deference is afforded to the treating physician because he or she "is employed to cure and has a greater opportunity to know and observe the individual." *Id*. Where the treating physician's opinions are not contradicted by another doctor, they may be rejected only for clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Even if the treating physician's opinions are contradicted, they can only be rejected only for specific and legitimate reasons, supported by substantial evidence in the record for doing so. *Id*.

Regardless of whether deference is given, a treating physician's opinion on the ultimate issue of disability is not conclusive. *Rodriguez*, 876 F.2d at 762 (citations omitted); *see also* SSR 96-5P, 1996 WL 374183, *2 ("The regulations provide that the final responsibility for deciding [whether an individual is 'disabled' under the Act] . . . is reserved to the Commissioner."); 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability.").

Accordingly, the fact that a particular physician is a treating physician does not mandate the adoption of that physician's opinions. In addition to the standard outlined above, treating physician's opinions are given less weight if they are inconsistent with the record as a whole or if the conclusions consist of vague, conclusory statements unsupported by medically acceptable data. *Stormo v. Barnhart*, 377 F.3d 801, 805-06 (8th Cir. 2004); *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (lack of objective medical findings, treatment notes, and

**MEMORANDUM DECISION AND ORDER - 7**

rationale to support treating physician's opinion are sufficient reason for rejecting that opinion). Such examples of items in a record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and details regarding the claimant's daily activities. *Id.*; *Bayliss v. Barnhart*, 427 F.3d at 1216; *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999).

      a.    Dr. Walters

Petitioner contends that the ALJ improperly gave "little weight" to the opinion of her treating general physician, Dr. Alton Walters, and that none of the reasons the ALJ provided for doing so are supported by substantial evidence in the record.

The ALJ's decision, however, contains considerable discussion and evaluation of Dr. Walters' opinion. The ALJ discusses how Dr. Walters' opinion contrasts sharply with other evidence in the record. For example, Dr. Walters opines that Petitioner frequently needs to shift positions. The ALJ states that "there is no indication in other medical records that she has to lay down or shift positions." (AR 24.) In particular, the ALJ compares Dr. Walters' opinion to the treatment notes of Dr. Long and Debbie Allred, F.N.P. (*Id.*) Both found that Petitioner was not in acute distress (AR 458, 461, 462) and Dr. Long found Petitioner's back pain to be "out of proportion to her MRI findings." (AR 465.) The ALJ also notes that Dr. Critchfield found Petitioner "demonstrated a smooth, well-coordinated gait with upright posture and showed no difficulties or any indication of pain." (AR 23, 520.) Additionally, Dr. Critchfield noted that Petitioner showed absolute "no signs of anxiousness, fear, nervousness, or any other forms of agoraphobia." (AR 23, 522.)

**MEMORANDUM DECISION AND ORDER - 8**

The ALJ also concluded that Dr. Walters' opinion was inconsistent with the treatment notes of Dr. Forsyth who saw Petitioner several times in 2008.  Dr. Forsyth's treatment notes indicated moderate symptoms related to depression and anxiety.  (AR 488-498.) Petitioner's subjective complaints as well as Dr. Forsyth's treatment notes were not as severe as opined by Dr. Walters during the same time period.  (AR 24-25.)

The ALJ also finds Dr. Walters' opinion to be inconsistent with his own treatment notes. (AR 25.)  For example, in several instances in both 2009 and 2010, Dr. Walters noted Petitioner's back pain was moderate and Petitioner was not experiencing any unusual anxiety or evidence of depression.  (AR 618, 620, 621, 624, 625, 651.)   The ALJ concludes that Dr. Walters' "treatment notes reflect a moderate degree of impairment, but do not support the significant impairments referenced in [his] opinions."  (AR 25.)

Further, the ALJ observes that Petitioner's description of her daily activities to examining physician Dr. Critchfield  are also inconsistent with Dr. Walters' opinion.  (AR 25.)  These daily activities included:

> . . . she wakes up at 7 a.m. and gets the kids off to school, her husband takes the kids to school, and she and her husband watch television, play with her 2 dogs, get on the computer, take a nap, and do housework . . . in the evenings she will cook dinner and watch more television. . . she is usually in bed by 10:30 p.m. . . she does not require the assistance of any other person in the maintenance of her personal hygiene or bodily functioning . . . she prepares the meals, does the housework, and her husband does the shopping and running of errands in the community.

(AR 523.)

In assessing Dr. Walters' opinion, the ALJ pointed to conflicting medical opinions as well as conflicting treatment notes, including  Dr. Walters' own treatment notes.  (AR 24-25.)

**MEMORANDUM DECISION AND ORDER - 9**

The ALJ also considered Petitioner's activities of daily living, which did not demonstrate the level of impairment that Dr. Walters reported in his residual functional capacity questionnaire. Accordingly, the ALJ gave clear and convincing reasons for assigning "little weight" to the opinion of Dr. Walters.

        b.        Dr. Forsyth

Petitioner also takes issue with the ALJ's treatment of Dr. Forsyth's treatment notes, specifically that the ALJ "failed to evaluate and weigh his opinion as required." Petitioner's Opening Brief, Dkt. 16, p. 14. Petitioner saw Dr. Forsyth six times during 2008. The ALJ provides a brief discussion of Dr. Forsyth's treatment notes. (AR 24-25.) Specifically, the ALJ notes that Dr. Forsyth found Petitioner had "moderate symptoms related to depression and anxiety." (AR 24.)

It is the duty of ALJ to give consideration to all the medical opinions in the record and discuss the weight assigned to them. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c), 416.927(e)(2)(ii). The ALJ discusses Dr. Forsyth's records but does not specifically state whether he found them persuasive or what weight was assigned to them. Although the ALJ neglected the duty to state what weight was assigned to Dr. Forsyth's treatment records, any error is harmless. *See Keyes-Zacharty v. Astrue* 695 F.3d 1156, 1161-66 (10th Cir. 2012) (discussing several instances where the ALJ failed to specify the weight given to medical opinions and finding them to be harmless error). Specifically, Dr. Forsyth did not assess any specific functional limitations and his treatment notes do not indicate any greater limitations than those found in the ALJ's residual functional capacity assessment. Dr. Forsyth found Petitioner to be alert and oriented with moderate depression and anxiety. (AR 488-498.) Because Dr.

**MEMORANDUM DECISION AND ORDER - 10**

Forsyth's notes do not indicate any further limitations than what the ALJ found in his RFC assessment (limiting Petitioner to work in a low stress setting, with only occasional decision-making or changes in the work setting and limiting her to only brief superficial contact with the general public and only occasional contact with co-workers and supervisors), any error in failing to specific the weight given to his opinion is harmless.

Where, as here, the Court can follow the ALJ's reasoning and can determine that correct legal standards have been applied, merely technical omissions in the articulation of the ALJ's reasoning do not dictate reversal. While a comprehensive explanation by the ALJ is preferred, the Court cannot insist on technical perfection when the result would be the same.

   *c.*  *Dr. Carpenter*

Petitioner raises the same "failure to evaluate and weigh" argument raised as to Dr. Forsyth, to Dr. Carpenter as well. Just as with Dr. Forsyth, the ALJ discusses Dr. Carpenter's treatment record but did not assign it any particularized weight. (AR 21.) Notably, however, Dr. Carpenter saw Petitioner one time in 2009. (AR 578-580.) Dr. Carpenter diagnosed post-traumatic stress disorder, major depressive order, and personality disorder. (AR 580.)

Like Dr. Forsyth, Dr. Carpenter did not assess any functional limitations. However, she saw Petitioner on only the one occasion, and such an attentuated contact is a legitimate focus for the amount of weight to be given to a physician's opinion. Further, as the ALJ describes in his opinion, Dr. Carpenter instructed Petitioner to return for a follow-up visit with her in four to six weeks, but Petitioner did not do so.

Petitioner does not point to anything in Dr. Carpenter's notes that would indicate a different residual functional capacity than the ALJ assessed. The fact that Dr. Carpenter

**MEMORANDUM DECISION AND ORDER - 11**

assigned a Global Assessment of Functioning score of 50 to 60, indicating moderate to serious impairment, is not enough alone to alter the ALJ's findings. *See* 65 Fed. Reg. 50746, 50764-65 (2000) ("The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorder listings.") As with Dr. Forsyth, the fact that the ALJ discussed but failed to assign a specific weight to Dr. Carpenter's treatment notes is harmless error. *See Keyes-Zacharty v. Astrue* 695 F.3d 1156, 1161-66 (10th Cir. 2012). The Court will not remand this case on a technicality that would not alter the ALJ's ultimate determination.

    2.    <u>Issues raised by Petitioner as to Impairments</u>

        a.    *Hearing*

Petitioner challenges the ALJ's conclusion that Petitioner's decreased hearing is not a severe impairment, and contends that the ALJ erred by not including hearing limitations in his RFC assessment. An impairment is severe if it limits a Petitioner's "ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921. However, an impairment or combination of impairments can be found "not severe" if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." *Id*. (citing SSR 85-28); *see Yuckert v. Bowen*, 841 F.2d 303, 306 (adopting SSR 85-28).

There is minimal evidence in the record about Petitioner's hearing. After an examination conducted by Dr. Walters, he noted "hearing decreased" in both ears, but also that her ears appeared "normal" and "unremarkable to inspection." (AR 630.) He also noted "decreased hearing" in his residual functional capacity questionnaire. (AR 649.) At the hearing, Petitioner said she has a "hard time hearing" and her seating location in relation to the ALJ was adjusted so that she could clearly hear the ALJ. (AR 40-41.)

**MEMORANDUM DECISION AND ORDER - 12**

As to the question of her hearing, the ALJ states: "[a]lthough the claimant indicated that she had difficulty hearing while giving testimony, which was noted by her treating physician in his evaluation, there is no hearing test in the record." (AR 15.) The ALJ also noted that she could hear at the hearing with a slight adjustment in seating. (AR 15.) Based on this, the ALJ found that there is no more than a minimal limitation in her ability to perform work-related activities. (AR 15.) The attenuated references to "decreased hearing" in the record have no corresponding medical evidence, such as hearing testing. The burden is on Petitioner to prove her impairment is "severe" which she has not done. In contrast, there is substantial evidence in the record to support the ALJ's finding that Petitioner's decreasing hearing is not a severe impairment.

Further, the ALJ's RFC assessment is proper. The ALJ is not required to include limitations for which there is no medical record support. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). The ALJ is not required to prepare a function-by-function analysis for medical impairments or conditions that the ALJ found neither credible nor supported by the record. *Id*. The burden is on Petitioner to prove she is disabled and she has not satisfied that burden. *See* 42 U.S.C. § 423(d)(5)(A); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

        b.    *Medication Side Effects*

Petitioner next argues that the ALJ erred in failing to consider the side effects of her medication, which causes her to feel tired and fatigued, and is medically documented. (*See* AR 270, 271, 272, 285.)

**MEMORANDUM DECISION AND ORDER - 13**

The ALJ assessed Petitioner's statements concerning fatigue and the side effects of her medication. Specifically, he noted that she "indicated in a written statement that her medication makes her tired, but testified that she has not noticed any side effects." (AR 22; *Cf.* AR 50, 285.) The ALJ also held that Petitioner's statements "regarding the extent of the fatigue is not fully supported by the record." (AR 20.)

The evidence of Petitioner suffering fatigue as a result of her medications comes from Petitioner's own statements (AR 270, 271, 272, 285) and Dr. Walters (AR 648, 661). As noted by the ALJ, Petitioner testified at the hearing that she did not suffer from any side effects (AR 50). First off, as discussed in detail above, for adequate reasons, the ALJ gave little weight to the opinion of Dr. Walters. Second, the ALJ also questioned Petitioner's credibility, for legally proper reasons. (AR 18-23.) The ALJ noted inconsistencies in Petitioner's statements, her daily activities, and pointed out that in his view the medical records did not support her testimony as to the intensity of the symptoms of which she complained. (AR 18-23.) *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (listing what the ALJ may consider in making a credibility determination).

The Court acknowledges that side effects are a factor to be considered in the formulation of an RFC. However, when the record does not support the Petitioner's claim regarding side effects, as the ALJ determined here, the ALJ does not err in omitting them from the RFC assessment. *See Hamilton v. Barnhart*, 2005 WL 3395198, *2 (9th Cir. 2005).

      c.     *Evidence of Mental Impairments After 2008*

Lastly, Petitioner contends the ALJ erred because he "relied exclusively on medical evidence from 2008 and earlier in evaluating her impairments." Petitioner's Opening Brief, Dkt.

**MEMORANDUM DECISION AND ORDER - 14**

16, p. 17. Petitioner points to evidence from Dr. Walters and Dr. Carpenter which she claims indicate a worsening of mental impairments after 2008. *Id*. Specifically, the Petitioner takes issue with what she claims is the ALJ picking and choosing from the evidence and using only evidence that supports his theory that comes from 2008 and earlier, thus ignoring the later evidence.

The ALJ looked at all the evidence in the record, including medical records from post-2008. There is discussion of Dr. Walters' treatment notes from 2009 and 2010 (AR 25) in addition to Dr. Carpenter's treatment record from 2009 (AR 21). As discussed above, Dr. Carpenter saw Petitioner on one occasion and Petitioner did not follow-up with her. The ALJ does discuss Dr. Carpenter's findings in his decision. (AR 21.) He has not ignored this evidence. Similarly, the ALJ provides a discussion of Dr. Walters' treatment records from 2009 and 2010. (AR 25.) The ALJ addressed that "in April 2009, September 2009, October 2009, and July 2010, the claimant was alert and oriented, and Dr. Walters noted no unusual anxiety or evidence of depression. In July 2010, her condition was improved with a reduction in medications." (*Id*.) The ALJ has not ignored evidence from 2009 and 2010 as Petitioner contends. Instead, the ALJ discussed this evidence, found it did not support Dr. Walters' opinion in the residual functional capacity questionnaires that Petitioner had significant limitations. (*Id*.)

The ALJ properly considered all the evidence in the record, and in doing so he included a thorough discussion of Petitioner's subjective and other statements as well as the medical records. The ALJ has considered and evaluated the entire record, not just the statements that support his conclusion that Petitioner is not disabled. Further, where the evidence is susceptible

**MEMORANDUM DECISION AND ORDER - 15**

to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549. The Court finds the ALJ rationally interpreted the medical records before him, including those from post-2008, and therefore there is no error in his decision.

## IV. CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. See *Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549.

The evidence upon which the ALJ relied can reasonably and rationally support his conclusions, despite the fact that such evidence may be susceptible to a different interpretation. Here, the ALJ's decision as to Petitioner's alleged disability is based on proper legal standards and supported by substantial evidence. Therefore, the Court concludes that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

Accordingly, the Commissioner's decision is affirmed.

## V. ORDER

Based on the foregoing, Petitioner's Petition for Review (Dkt. 1) is DENIED, the decision of the Commissioner is AFFIRMED, and this action is DISMISSED in its entirety, with prejudice.



DATED: **September 18, 2013**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 17**